(9 App. Div. 452.)

MAYOR, ETC., OF CITY OF NEW YORK v. FITCH et al.

(Supreme Court, Appellate Division, First Department. October 23, 1896.)

TRUSTS—EQUITABLE JURISDICTION—INSTRUCTING TRUSTEE.

The rule permitting trustees to seek the advice of the court on doubtful questions does not authorize an action by New York City to obtain an adjudication as to who was the highest legal bidder at a sale by the comptroller of a street-railroad franchise, or a decree instructing the comptroller as to his duty in the premises, since the relation of the city as trustee of the streets is only nominal.

Appeal from special term, New York county.

Action by the mayor, aldermen, and commonalty of the city of New York against Ashbel P. Fitch, comptroller of the city of New York, and others, for an injunction. From an order continuing an injunction pendente lite, defendant People's Traction Company appeals. Reversed.

The injunction restrained the defendant Fitch, as comptroller, from continuing the sale of the franchise of constructing, maintaining, and operating a

certain street-surface railway in the city of New York, and from entertaining, receiving, or accepting any further bids at such sale. It also restrained the three corporations defendant from making any further bids at such sale, or from receiving or accepting an award of such franchise upon any bid heretofore made by either of them. The sale was pursuant to a resolution of the common council, and in accordance with the railroad law. It was adjourned to the 9th day of October, 1895. Upon such sale, after two very small bids, the North New York City Traction Company bid $39^{12}/_{16}$ per cent. Immediately thereafter the People's Traction Company bid 97 per cent. for the first five years, and 95 per cent. thereafter. All such bids were additional to the percentage required by the railroad statute, namely, 3 per cent. for the first five years and 5 per cent. thereafter. Therefore the aggregate bid of the People's Traction Company was 100 per cent. of its gross receipts. The defendant the North New York City Traction Company immediately thereafter bid 101 per cent., and the People's Traction Company at once protested against the reception of any further bid beyond its bid of 100 per cent., claiming that no legal bid could be made to pay any percentage greater than 100 per cent. The protest was overruled, and the bid of 101 per cent. received, and thereupon the People's Traction bid 1,000 per cent. The bidding continued until the close of business hours, the last bid being 6,975 per cent. by the defendant the North New York City Traction Company; and thereupon the auction sale was suspended, and an announcement made that it would be continued on the next day, October 10th, at 12 o'clock noon, at the same place. The Southern Boulevard Company made no bid after 3½ per cent. On the 10th day of October, 1895, before the hour fixed for resuming the sale, an action was commenced in the supreme court by the Southern Boulevard Company, as plaintiff, against the People's Traction Company, the North New York City Traction Company, and Ashbel P. Fitch, comptroller. In said action an order was granted by a justice of the supreme court enjoining further continuance of the sale until further order of the court. Subsequently the action was tried, and a judgment was entered therein dismissing the complaint of the Southern Boulevard Company upon the ground that it had no grievance to be redressed, because its bid of 3½ per cent. had been largely exceeded by subsequent bids made in good faith by the two competitive companies. This judgment was subsequently affirmed by this appellate division. 39 N. Y. Supp. 266. On the 13th day of June this action was commenced, and the injunction order under review was obtained and served upon the respective parties on the same day. The relief demanded in the present complaint is as follows: (1) If the court finds that the bidding had passed beyond all reasonable and valid bids, that the court determine in such case which is the highest legal and valid bid, and direct the comptroller to award the franchise accordingly; or (2) direct that the biddings be canceled, and the proceedings be adjudged to be null and void, and direct a resale under such terms and conditions as may be lawful; and (3) that the court render such judgment as will protect the plaintiff's interest in said franchise, and instruct the said defendant Ashbel P. Fitch, comptroller, aforesaid, as to his official duty in the premises, and that the court in the meantime restrain and enjoin said corporation defendant from purchasing said franchises, and said Ashbel P. Fitch from awarding said franchise to either of the bidders at said auction sale, until the hearing and determination of this action.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

B. F. Tracy, for appellant People's Traction Co.
F. M. Scott, Corp. Counsel, in pro. per.
W. F. Sheehan, for respondent North New York City Traction Co.
J. M. Tierney, for respondent Southern Boulevard R. Co.
George E. Mott, for respondent Fitch.

BARRETT, J.    The learned judge at special term aptly said that "this action is brought by the plaintiff, as trustee of the streets, to

ascertain which of the defendants is the highest bidder" for the franchise in dispute. The question is, can such an action be maintained? If it can, it is entirely proper to preserve the existing status by injunction until the plaintiff's supposed doubts are resolved upon the trial. If it cannot, then the injunction pendente lite should, of course, be dissolved. The equity of the complaint rests avowedly upon the plaintiff's trust relation to the streets of the city. But for this trust relation, it is not contended that such an action as the present would lie. In fact, it is not the province of a court of equity to act as a general adviser, nor to settle people's disputes by resolving their own or other people's doubts with regard thereto. A man who owns property, and puts it up at auction, may be greatly interested to know whether the sale was legally conducted, and who made the highest valid bid. But, even if there were no statute of frauds, he could not well come into a court of equity to have this ascertained for him, and, upon its being ascertained, to obtain such judgment as against all the bidders, defendants, as might be appropriate. Except in interpleader or some similar and well-recognized head of equity, a party must decide for himself as to his rights. Having thus decided, he may assert those rights, and submit the issues arising from their denial by his adversary to the arbitrament of a court regularly constituted to hear and determine disputed questions of fact and law.

The question, then, is, does the plaintiff come within the rule which permits a trustee to ask the opinion of the court upon a doubtful question? To answer this satisfactorily, we must have a clear understanding of the precise nature of the advisory jurisdiction, and of the reason why trustees are permitted, under given circumstances, to seek instruction and direction from the court. Primarily, the jurisdiction is incidental to that over trusts (Bailey v. Briggs, 56 N. Y. 407); that is, over express trusts created by some appropriate instrument. The trustee thereby appointed cannot be expected to incur risk in the distribution of the trust fund, or responsibility resulting from an erroneous construction of the trust. This risk and responsibility are such as attach to the trustee in his relation to the cestuis que trustent. But even then there must be some doubt or obscurity as to what the law is, and what his conduct ought to be under it, to entitle the trustee to the advice and instruction of the court. In re Brewer, 43 Hun, 600. This advisory jurisdiction will not be exercised where the power has been wholly and plainly confided to the trustee (Id.); nor even in construing a will, where the estate devised is a legal one, and the questions raised are also purely legal (Perry, Trusts, 476a; Chipman v. Montgomery, 63 N. Y. 221). The circumstances which will justify the trustee's application for advice are those which relate to the terms of the trust itself, and to the rights of the beneficiary thereunder. They are not such as relate to the conduct of the trustees in his dealings with third parties. There may, for instance, be a close question, upon the face of the trust instrument, whether the trustee should utilize trust funds in improving vacant lots. He may well be justified in asking instructions upon that head. But he would have no right to ask a court

of equity to advise him as to what architect or builder he should employ, or what course he should adopt with regard to a dispute between rival claimants to the building contract; still less with regard to a dispute between himself and those with whom he had contracted. All such doubts and difficulties would be foreign to the trust proper. They would not come within the purview of the court's advisory jurisdiction. As to these matters the trustee would have to decide for himself what his proper course should be. He would have to come into court, whether in equity or at law, in the same way as any other suitor; in no other way. He would, in fact, be subject to the ordinary rule that, to put a court of equity in motion, there must be an actual litigation in respect to matters which are the proper subjects of the jurisdiction of that court. Chipman v. Montgomery, 63 N. Y. 230. In the present case there is no such trust as the rule invoked by the plaintiff contemplates. The city of New York is a trustee in but a general sense; that is, a trustee not for its citizens alone, but for the public at large. This is nothing, more than saying that the fee of the streets is in the corporation, subject to public use. It is quite clear that such a nominal trust furnishes no ground for the exercise of advisory jurisdiction. There is no trust instrument to be construed, and there are no cestuis que trustent to be considered. The defendants certainly are not the beneficiaries under the public use trust. They are simply rival claimants to a franchise which the city is authorized to grant upon certain statutory terms and conditions. The city, as technical trustee for the public use, incurs no risk as trustee, no matter how the franchise may be disposed of. As between itself and the public, it is a matter of no direct pecuniary consequence how it or its comptroller reads the statute, or acts upon the circumstances which attended the bidding. Whatever loss the city may here incur by a false move will be its own direct loss. Indeed, it is so averred in the complaint. It will not be its loss, as trustee, resulting from its error in a trust capacity. Nor will it be charged with any such loss by a wronged cestui que trust. It is quite plain that the circumstances under consideration have nothing whatever to do with even the city's nominal trust. They are foreign thereto, both inherently and in their application to the defendants.

There are other objections to the complaint, notably the failure to aver doubt, and the contrary averment with respect to bids above 100 per cent. of the gross receipts. We prefer, however, to place our judgment upon the distinct ground that the city cannot come into a court of equity for instruction and direction as to the course which it would pursue under the circumstances disclosed. The complaint is demurrable, and the court upon the trial will be required to dismiss it.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs, and the temporary injunction dissolved. All concur.